**FILED**

**November 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0234 – *The Board of Education of the County of Wyoming v. Dawson*

WOOTON, J., concurring:

I concur in the majority's determination that the circuit court erred in finding that the grievance board properly granted respondent Dawson's ("Ms. Dawson") grievance and its reversal with directions to deny the grievance. However, I write separately to draw focus to what I believe is a dispositive factor given little examination by the majority or the parties.

Ms. Dawson grieves the petitioner Wyoming County Board of Education's ("BOE") refusal to award her a new posting for an extracurricular, vocational bus route—which she had previously run for decades—in addition to her regular bus route. The BOE contends that Ms. Dawson did not qualify for the vocational route because it conflicts with her regular route, and she was only previously able to hold both contracts because her regular route was improperly modified by reassigning a portion of it to another driver. Ms. Dawson contends, generally, that the BOE is not permitted to alter these aggregated duties without her consent,[1] notwithstanding any such "mistake" in modifying her regular run by

---

[1] Ms. Dawson views her work duties—both the regular and vocational runs—in the aggregate for purposes of claiming her duties and her compensation were altered without her consent. In support, she cites West Virginia Code § 18A-4-8(m) (2023) and § 18A-4-8a(j) (2023) which prohibit reductions in compensation during a fiscal year and non-consensual alterations in daily work hours during the school year, respectively.

However, the record is clear that Ms. Dawson's regular bus route and the grieved vocational route are separately awarded contracts, each with its own terms and conditions. (continued . . .)

1

reassigning a portion of it and the BOE was therefore required to re-award her the vocational route—even after it was terminated and reposted. The majority tracks this characterization of the issue maintaining that Ms. Dawson's "entire case hinges on whether or not [her] regular run was legally modified in 1987 or 1988." The majority agrees that the reassignment of the morning elementary portion of her regular route was an ultra vires act, i.e., the elementary run was not properly posted, nor was modification of the route approved by the BOE. Accordingly, the majority declares that Ms. Dawson failed to adduce evidence that she held a valid contract entitling her to the "as modified" regular bus route, and therefore the grievance should have been denied.

However, the scope of Ms. Dawson's grievance is critical, along with precise identification of the "legal mistake" and the route affected thereby. The appendix record reveals that Ms. Dawson grieved *only* the failure to be awarded the extracurricular assignment, i.e. the vocational route.[2] She did not grieve any aspect of her regular bus route, including any "modification" or refusal to continue to modify it. Therefore, whether she proved that she was contractually entitled to a modified regular route and any longstanding "legal mistake" relative to reassigning the morning elementary portion of her

A failure to award a bid upon a new job posting is plainly not what is contemplated by the statutes' prohibition on changing a service person's daily work schedule or reducing his or her pay during the school or fiscal year.

[2] Her complaint states that "when I was RIFed from my run on September 11, 2017, it was reposted and I should've been put back in the same position." The relief she requested was to be "put back on my run[.]"

2

regular run is fairly immaterial to her grievance of the BOE's refusal to award her the additional *vocational route*—an entirely new and separate contract.

In my view, the most important fact—given short shrift by the BOE and majority—is that at the end of the 2016-17 school year the BOE terminated *all* vocational bus routes and reposted them to alter the term from 200 days to 180 days. This had nothing to do with Ms. Dawson's situation—which was discovered somewhat contemporaneously. However, the termination of the vocational route had the unintended effect of resolving Ms. Dawson's scheduling conflict with her regular bus route. Once the vocational route was ended, Ms. Dawson no longer had a conflict with the morning elementary portion of her regular route and could run it without requiring the morning elementary portion to be reassigned.

When the vocational routes were reposted with new terms the next school year, Ms. Dawson simply was not awarded the route because of the now-recognized conflict with her standing, regular route—which was no longer being modified to accommodate the scheduling conflict by reassigning the morning elementary run. Although the BOE did permit Ms. Dawson to cover the vocational route for nineteen days at the beginning of the 2017-18 school year because the route had not yet been awarded, she certainly was not re-awarded the route. The BOE's failure to award her the new vocational route is precisely—and *exclusively*—what she grieved.

3

While the reassignment of the morning elementary portion of her regular route—which was the exclusive focus of the grievance board, the BOE, and the majority—may well have been a mistake, the BOE's "mistake" relevant to Ms. Dawson's grievance was previously awarding Ms. Dawson the additional, vocational route despite the conflict with her regular route. That conflict, and therefore "mistake," resolved itself when the vocational runs were terminated. And when the vocational route was properly reposted, Ms. Dawson simply did not qualify for it because of the conflict with her regular route which was no longer being modified to resolve the scheduling conflict.[3] In effect, the proper termination of *all* of the vocational routes—not just Ms. Dawson's—had the unintended effect of allowing the BOE to resolve the "mistake" of allowing Ms. Dawson to hold conflicting routes and award the vocational route anew to the employee who properly qualified. The BOE did not "take" the vocational route from her, it did not alter her duties or compensation, it simply did not award her an extracurricular assignment for which she no longer qualified because of a conflict with her contractual regular route.

Ms. Dawson's position is that the BOE was obligated to once again create a scheduling conflict by awarding her the new vocational route which conflicted with her

---

[3] Ms. Dawson relies heavily on West Virginia Code § 18A-4-16(6) (2021) which provides that "[i]f an extracurricular contract has been terminated and is reestablished in any succeeding school year, it shall be offered to the employee who held the assignment at the time of its termination." However, this provision obviously presumes that the employee who held the assignment previously was and remains otherwise qualified to hold the position. To construe it otherwise would result in potential absurdities where individuals who no longer meet even basic prerequisites required by law for employment and/or award of a contract are nonetheless entitled to a position.

regular route.  However, Ms. Dawson points to no authority requiring the BOE to commit the same "mistake" it had perpetuated for thirty years by awarding a *new* contract that conflicted with her regular route.  For this reason, I respectfully concur.